Case number 19-3071. United States of America versus Russell Harrison, also known as Russ Abellant. Mr. Orenberg for the Abellant, Mr. Coleman for the Abellant. Good morning, Mr. Orenberg. We'll hear from you. Thank you, Your Honor. Good morning. May it please support my name is Alan Orenberg. I represent Russell Harrison in this case. I would first like to address the issue that the district court imposed a substantively and procedurally unreasonable sentence when it imposed an upward variance and sentenced Mr. Harrison to 50 months over the applicable sentencing guidelines. The district court, in my view, improperly deviated from the rules that are clear that when there is going to be a variance in this case, there must be justification to sufficiently compel to support the degree of the variance. I'm citing to the case United States versus Brown of this circuit from 2015. In addition, the trial judge in any case when there's going to be an upward variance must state with specificity the reason for the imposition of a sentence different from that described by the appropriate guidelines calculation. In the case of Mr. Harrison, the guideline calculations was 60 months or five years. The district court eventually imposed a sentence of 110 months, which is 60 months higher, excuse me, 50 months higher than the 60 month sentence that is prescribed by the guidelines. For whatever reason, the district court did not in the sentencing hearing describe with specificity the reasons why he varied upward. In fact, if I can draw the court's attention to the appendix, page 167 at the bottom, through almost the bottom of page 168, the district court in this case made some general observations about sentencing procedures. In conclusion, he just said, I've taken into consideration all three approaches that have been advanced. There have been considerable discussion about calculation of a sentence using advisory sentencing guidelines. I have demonstrated to the court, I've come up with what I think is a fair sentence as I can under the circumstances. Well, there's no specificity given by Judge Leon in this case. But Mr. Orenberg, in fairness, Judge Leon on page 167 references his prior concerns and wasn't there a hearing of some sort in May in which various aspects of the sentence and concerns that the court had were discussed? Yes, Judge Jackson, the sentencing began back in May, concluded in September. Yes, back in May, there was considerable discussion about the court's proposed variance at that time. But my concern is and what I raise here is not only in the final sentencing hearing conducted in September, but that on the statement of reasons itself on page 218 of the appendix, at the very bottom, section D, state the basis for a variance. Again, Judge Leon just gave a quick two-sentence statement, quote, severity and consistency of criminal conduct, some of which is violent in nature, including stabbing of a fellow deterrence, both specific and general. This is a very short, concise statement of reasons why he gave this variance sentence. When I submit to the court that he should have been more detailed, he should have been more thorough. Mr. Orenberg, even if he was more detailed in the statement of reasons, would that have satisfied the law with respect to his obligation to give the reasons at sentencing? I guess I'm not sure why a detailed or not detailed statement of reasons matters in terms of the determination of whether he was procedurally unreasonable at sentencing. Well, Your Honor, I'm going to stand by the United States Code itself, 3553c2, which requires the court to state with specificity the reasons for the sentence or the variance in this case. And it's my position that he did not do so in a proper manner. Suppose we think the statement, the first statement was adequate, but was given at the wrong time. So, yeah, there's a legal error. There may be a legal error to the extent the statement of reasons wasn't given at the moment of sentencing. But we know perfectly well what the judge was thinking and why he thought a sentence substantially above five years was appropriate. So, on the procedural point, what would be the point of remanding for him to say that he meant what he has already told us? Well, with regard to the procedural point, I'll direct the court's attention or remind this court that I submitted that Judge Leon used some improper factors when considering the variance. Fair enough. That's a separate point. But just on the failure to state, usually procedural reasonableness remands are when the district court doesn't say enough. And here, putting aside the Fourth Circuit issue for a just didn't say it at exactly the right time. It seems like a case where there's an error, but no prejudice. Well, the prejudice to my client is he's the one who's doing the additional significant time. Whether or not Judge Leon did it at the appropriate time, I don't, well, my position is he did not at the conclusion of the sentencing hearing or very near the conclusion of the hearing adequately and with specificity explain his reasons why he was going to vary upward in such a dramatic considerable amount. So, you're saying that the timing does matter? Yes. So, even if he had at the May hearing explained extensively what he was thinking at that time, the sentencing was in September. And is it your position that when he imposed the sentence, he needed to repeat perhaps what he had previously said? Yes, Your Honor, that's my position. And I don't think anyone would disagree that Judge Leon has the adequate wherewithal to repeat or to explain his reasons, but he didn't do so at the appropriate time, which was at the sentencing hearing in September of that year. All right. So, can you talk about the significance of any of the discussion of the Fourth Circuit standard and Winstead? I understood you also to be concerned about the potential that the Well, I mean, it's improper because the government chose where to bring this prosecution. Okay. It chose to bring it in the District of Columbia, could have brought it in Maryland, or perhaps elsewhere if there was a legal nexus of doing so. And I think the government should be held to the law of our jurisdiction because it chose to bring the case, the prosecution here in the District of Columbia. It's somewhat unfair that the government later on in a sentencing posture now brings in, and I'm going to say infects the sentencing process, the sentencing discussions that were had with this argument that, but for the fact that he could have been prosecuted in Maryland, he would have received a 15-year mandatory minimum. I think that it was improper for the government to raise that before our district court in the District of Columbia. But can I just ask you, because there is an applicable sentencing statute and principle related to unwarranted sentencing disparity. Correct. So I'm wanting you to explain what you mean that they couldn't talk about what would happen elsewhere. I mean, I understand they did not choose to sentence him or did not choose to prosecute him in Maryland, but does that mean that nothing about another jurisdiction is relevant at the current sentencing? No, I'm not saying that, but I'm saying given the full background of what happened in this case, including, you know, there's referencing to his, at that time, he was pending sentencing in another case in the District of Columbia for assault within the DC jail. The culmination or all of that infected the sentencing considerations of the district court in this case. But how does it infecting in some sort of improper pejorative way for the district court to consider other criminal conduct, i.e. the stabbing in the jail or as Judge Jackson mentioned, you know, the need to prevent unwarranted sentencing disparities, which is explicitly set forth in the statute 3553A. Well, that's a very good point, Judge Wilkins. Sure, the court is free to consider all the things, but I guess in the heat of the discussion that the parties were having in May at the initial sentencing hearing, it elevated the stakes, if you will, for Mr. Harrison to the point where he stood convicted of only 924C, the guidelines was a flat 60 months. All of a sudden, the court, the government's asking for 132 months. The defense at the time was asking for range, I believe it was 75 to 81 months, which sounded like a reasonable proposition for the court to consider at that time, but the court nevertheless went to a higher amount of 110 months without, in my view, or with in my view improperly or somehow considering all these factors when it just should have initially considered the flat 60 month sentence for the 924C. As I pointed out, Mr. Harrison is admittedly, or in my view, a minor role player in the overall conspiracy of the case. There was one other gentleman, the leader of this case, who got a sentence of 192 months. Four others in this case received far less sentences than Mr. Harris, and two of the co-defendants are yet to be sentenced in this case, but Mr. Harrison was a minor participant when it came to the drug conspiracy activity. Sure, when he was arrested or in his home was found, a large cache of weapons and ammunition, but that's all it was, and that's what he pled to was the 924C count. I notice I'm into my rebuttal. I think I'm in my rebuttal time, but that's what purple means, so I'd like to reserve a little bit to respond to Mr. Before you do, Mr. Orenberg, can I just ask you one more question, please? I'm interested in your ineffective assistance claim, and I want to make sure that I understand exactly what you're arguing. In the blue brief, you say that Mr. Harrison's Superior Court counsel fell short because he failed to continue the Superior Court case, and I'm trying to understand whether, in using the term case, you're referring to the case as a whole, including both failure to delay the plea to the new misdemeanor infraction and the sentence, or are you saying that it's ineffective just because the sentence was not delayed? It's the latter, Judge Jackson. All right. With that, I'd like to reserve a little bit of time for rebuttal. All right. We'll hear from Mr. Coleman. Good morning. May it please the court, Nick Coleman for the United States. I'd like to begin by addressing Appellant's arguments about the substantive and procedural unreasonableness, as he argues of his sentence, and then answer any questions that the court may have about his other two claims. I think it's important to note here Appellant had, first of all, prior convictions for assault with a dangerous weapon, carrying a pistol without a license, attempted possession with intent to distribute PCP, and attempted possession with intent to distribute cocaine in his record. In this offense, he had six loaded semi-automatic weapons in his apartment, an additional 80 rounds of ammunition, a firearm silencer, and three gun magazines, one of which could hold 50 rounds. While he was awaiting sentencing, in this case at the jail, Appellant apparently more than once stabbed another inmate with the help of another inmate. The entirety of that record made clear why the district court varied upwards, and why defense counsel didn't ask for a more fulsome explanation, even when there was, the district court did say at the end of the sentencing proceeding, are there any questions, and Appellant and his counsel did not have that. Can I just ask you a couple things? First of all, it would seem to me that the statute is such that regardless of how clear a record may be concerning the various factors, the district court is obligated to state at sentencing the reasons. Am I wrong about that? I mean, we don't have a world in which the district court can say two lines, I'm imposing a fair sentence, and even as clear as the record may be, that's enough, right? I think that's, obviously, yes, that is what the statute says. I think it is important to note that this case does, and this claim does come before this court, under the plain error standard of review, because Appellant did not object and say that's an insufficient and inadequate statement of reasons, you're wrong. I think this court needs to be more specific. So I think at that point, you know, even if this court were to say, look, that's error, we still have to answer the question, you know, on this entire record, was there sufficient prejudice to him, and was that error so plain or obvious this court needs to step in and say, we have to remand this for essentially more reasons. What about the potential that the district court relied on an inappropriate factor? Because to the extent that you are suggesting, and maybe you didn't in your recitation, but are you at all relying on the Fourth Circuit Winstead issue? Because that was a big focus of the previous hearing. Okay, so I think the, it is very clear, first of all, it's hard for me to completely understand Appellant's argument about how this was an improper factor. It certainly would have been improper, obviously, if the district court had said, I'm just going to treat Winstead as not applying in this case, either because, you know, well, he pleaded guilty before Winstead came out or whatever, but I'm going to apply the career offender guidance. We know that Judge Leon did not do that here, because he doesn't impose a 15 year sentence. He varies upwards, but not anywhere the 180. Mr. Coleman, can I, we don't know, right? Because he doesn't tell us what he's relying on. He imposes a sentence that is greater than the guideline sentence. But yes, admittedly less than the 15 years. And I'm not sure there's anything in the record that explains how he reaches the number that he reaches. Do you see that somewhere that I'm not aware of? So he does not specifically announce why 110 months. I can say this, if you look at the entire record, again, the government asked for a 132 month sentence, which would have been an upward variance of 72 months. The defense, obviously, it still stated his preference was for 60 months, but said, in the alternative, if you're going to do a variance, do 70 to 87 months. So that would have been an upward variance of 17 months at the top. The 15 month upward variance that the court arrives at is just above the halfway point between the government and the defense recommendations. So I think any idea, first of all, that, you know, that this court, that Judge Leon was relying on Winstead to say something, I'm not, again, I'm not entirely sure what it is that appellant is saying was improper here, in terms of thinking about how appellant might have been sentenced, if he had been prosecuted in Maryland, as opposed to the District of Columbia. But doesn't judge, first of all, isn't Winstead a subject, an extensive discussion in the May It's just a guy, he never purports to suggest that he will actually apply the Fourth Circuit standard. But when the objection of the defense comes that it's improper to consider it, the district court appears to defend the consideration of that factor. It's a benchmark, he says. So I don't understand how that's inconsistent with thinking that he may have in part, he doesn't have to hit it in order to rely on it. Right. So, so, right. That's why I'm trying to distinguish between two things. And I'm sorry, if I haven't been entirely clear about that. It would be there are two ways in which consideration of that, you know, could have been taken one would have been error, and which would have been to say, I'm not going to apply Winstead, I think it's unfair. Okay, that that would have been an error, because obviously, this court's law applies. And at that point, in order to correctly apply the guidelines, the court could not apply the career offender enhancement. That is not what the district court does here. There is another aspect of this, however, which is to avoid to consider the entire record of the case include and as well as such considerations as avoiding unwanted unwarranted disparities between how somebody sentenced in Maryland for the same conduct would have been sentenced versus the District of Columbia, that in his discretion, the district judge can consider things like that. And I'm not aware of any decision of this court that says that it's improper for a judge to look to that. In fact, if anything, this court and the Supreme Court and other circuit courts of appeals have said that judges have very broad discretion in factors. You have posited two potential scenarios. I'm trying to understand how you know, which one occurred here, given so judge, given Judge Leon's lack of explanation. Okay, I think we know it wasn't the former because he doesn't impose a 15 year sentence or say, I think the guidelines range should have been 180 months. And that's what I'm imposing here, that would have gone up to the line of saying, and perhaps crossed it of saying, Winstead just doesn't apply. Remember, pre Winstead, it would have been 180 months guidelines since that career offender. So the only way in your view for him to have signaled that he was not rejecting Winstead would have been to actually select the career offender sentence. There's no view that he could have appreciated and understood the art, the allegedly improper argument that the DC circuit was wrong. In Winstead, you don't think he could have taken that into account. So, again, I think we should I think this court has always, you know, applied a presumption that, you know, which which could be rebutted. But there's a presumption that district judges know and apply the law. So I think there is certainly no, there's nothing in this record that rebuts that presumption, that the district judge was well aware of this court's decision and Winstead understood that the career offender enhancement did not apply under the guidelines. And the court does not say I think his real guidelines range was 180 months. And if anything, what I'm doing now is doing a downward variance. It's very clear. He's saying, look, I understand it's a 60 month guidelines. That's the guy. Isn't 180 months ACCA, the ACCA and not career offender, you keep saying 180. So I think, though, with the career offender sentence, it would have been and again, I apologize if I'm getting this a little bit wrong. Yes, an ACCA sentence if the government had charged him as as a career offender, if that had been in the indictment, then yes, the mandatory minimum sentence would have been 15 years. I believe the career offender enhancement, I can't remember exactly how much it was, but it would have been a lot higher. I mean, it would have been substantially higher. And the government did cite both of those aspects. It said, in Maryland, he could have been charged under ACCA. In other words, where the mandatory minimum sentence would have been 15 years because of the Fourth Circuit's approach. But then you also have this career offender enhancement that would have greatly increased the guidelines range. We know that Judge Leon did not treat this guideline, his guideline sentence as being affected by the career offender enhancement. The only discussion that happened here was what kind of an upward variance should be applied. That's what the parties were arguing about. And the court settles this dispute. But it's very clear from the record why he does that. Again, I don't think this is I think, you know, very similar to what happened in United States versus Jackson, which we cite in our brief. But Mr. Coleman, Akigbe, Brown, and N. Ray Seale case, were all plain error cases. And they're all cases that we reversed and when we vacated and remanded for resentencing because of the failure to adequately explain the reasons. Right. And if look at the explanations that were given in Akigbe, Brown, and N. Ray Seale case, all of them seem to be more detailed explanations than what was given here. And yet we sent all of those back. So if we want to follow our own precedent, why wouldn't we send this one back? All right. So I think there are some important distinctions between those cases and this one. If I could start with N. Ray Seale case, and I just want to make sure that I'm talking about the right one here. This is 527F3188. Is that the one that your honor is referring to? Okay. Appellate doesn't cite that here. But what I can say is this. In that case, which obviously involves the revocation of supervised release, there, you know, if the guidelines range is three to nine months, the court imposes 18 months, even after the government had recommended only 12 months as a revocation sentence. The defendant there, although he had violated his supervised release, there was a pretty substantial dispute about that. And the violations themselves were certainly not the most serious. They involved a failure to communicate with the probation officer. They were not new offenses. So part of the problem was that there was, and this court clearly implies that, that there was a problem because this court couldn't really evaluate the substantive reasonableness of the sentence, which was apparently, you know, in this court's view, in question without a greater, without a greater statement of reasons. That isn't what, I mean, here, I don't think that there really is any serious question that this was a substantively reasonable sentence for appellant, given his criminal history, given the severity of the offense here, where it's not just one gun, but he's got six guns and a lot of other stuff. Given his conduct while pending sentencing, in which he doesn't just, you know, fail to comply with Department of Corrections regulations, but he stabs another inmate. In light of those factors, I don't think any serious argument can be made that this isn't a substantively reasonable sentence or that it isn't clear from the record why the district court varied upwards. So that's why I think this is a very different case from Henry's sealed case. Okay. Brown. Oh, yeah. Go ahead. Go ahead. Keep going. So in Brown, I think the bigger problem in Brown was that the court was essentially citing aspects of the defendant's offense and saying that it was more severe when in fact, those aspects are really just part of the offense. That's obviously, you know, that involved child sexual abuse. So, again, there wasn't the same clarity under the record as here, as to why this what why it was a much more serious offense than the ordinary mine run of offenses. This is beyond most 924 C offenses, certainly that that I've seen. And I'm sorry, Judge Jackson, I guess I'm just trying to As long as the record is sufficient to support the substantive reasonableness of the of the unexplained sentence, there really isn't plain error, prejudice or whatever. And that the distinction between this case and the others is that in those cases, there could be some question about what the sentence was. But in this case, there's not. Is that your point? I think here where the substantive reasonableness of the sentence is so clear, and it really isn't in doubt what factors the court was looking to that a remand is religious pointless. There isn't anything that that that really needs to be said as to why the court varied upward in the way that it Can I ask you, Mr. Coleman? You keep saying it's so clear. And what's confusing to me about that is, first of all, we had the part one, to some extent of the sentencing hearing in May. He imposed a sentence in September. Between that time, lots of things happen, including the probation office giving a recommendation, the the sentencing in the other case. The parties have supplemental briefing, there's a lot of talk about the Fourth Circuit and Winstead and the other case and what its role is. So to me, as I see this record, there are lots of possibilities as to what the district court relied on in reaching 110. It's not like there really is only one factor at play. And so the 110 is plain on the record. And so I'm just concerned about your your representation that this case is such that we can any anybody with eyes can look at it and see where 110 comes from, because I don't see that in this. So I have two responses, Your Honor. The first is again, this is a plain error case. I think to hold sort of that any time a judge fails to give, you know, a sufficiently, you know, fulsome explanation at the time of sentencing that, you know, satisfies all parties as to the as to, you know, the sentence that the judge comes up to to say that that's essentially just per se plain error that must be reversed. I don't think first of all, it's not consistent with this court's decisions, because obviously, this court did not reverse in Jackson. But I think it also sort of, you know, absolves defense counsel of any obligation to say at the time of sentencing, look, I don't think the court has addressed every factor. I don't think the court could you please explain to me why this happened so that we don't just have seriatim reversals, or remands for the court to, you know, over the course, potentially of months, if not years, provide an explanation. If the defense wants more of an explanation, it can get one. But secondly, I think the point is that if there are potential serious errors of law or mistakes of fact that could have been at play, or where it could well be that the substantive reasonableness of the sentence may be in question, and this court doesn't want to step in and just automatically say that's a substantively unreasonable sentence before giving the district court a chance to sort of step in and say that if you don't have that, and we submit you don't have that on this record, then there isn't a need to remand. There is nothing more that needs to be said because there is absolutely no we submit there is nothing in this record to suggest that Judge Leon misapplied the law, refused to follow this court's teachings that he misapplied the law, that he did not understand the facts correctly. I understand, of course, that appellant makes arguments now that the court didn't adequately consider things about his background. But the fact is, this is a defendant with a very serious criminal history, with a very serious offense at issue, and who had committed one of the more serious infractions that you can commit while pending sentencing. And in light of that record, we respectfully submit there just isn't a need. Certainly, he hasn't shown the possibility of prejudice that would justify a remand for him essentially to make further arguments to the court. Suppose we had a case where the maximum sentence was, you know, five years, and the guidelines range was, you know, 24 to 30 months. And, you know, the defense asks for, you know, 12 months and the government asks for 48 months. And the court imposes a guideline sentence of, you know, 30 months, and gives no explanation, just says, says, I'm imposing a guideline sentence. I think that's fair and reasonable. And that's all the explanation. Under your view of the law, on plain error review, we would say that that's okay, right? Because it's clear that that's a substantively reasonable sentence, because it's, it's a guideline sentence. Even if there's no explanation for why the district court didn't go below, very downward as the defense wanted them to, or didn't vary upwards as the as the government, right, that would be that would there be no plain error, if a guideline sentence were imposed, and there was no explanation. That's, that's the rule, under your view of the law. That is not, no, that is not our position that that's just a hard and fast rule. Because again, I think what I what we would need to know in in in your honor's hypothetical case is, for example, what were the reasons that the defense came up with for a below guideline sentence? Did he identify some factor that he think the guideline that he thought the guidelines did not address some aspect of the case? And if he could convince this court, that the district court's failure to address that, seriously, you know, called into question whether or not the sentence should have been the way that it was. Or if he came to this court and said, look, there's a reason why the guidelines just would have been substantively unreasonable. In my case, here's that factor, then perhaps he could establish plain error. Coleman, are you aware of any instance where we have said that a guideline sentence is substantively unreasonable? I'm not, I don't think I can identify that offhand. But again, I'm not going to rule out the possibility that a defendant could could at least make that argument whether he could make that showing I don't know. So Mr. Coleman, don't we have here the exact flip side of what you are now saying you suggest that if a defendant in Judge Wilkins hypothetical could argue that the guideline sentence, there was some reason why it was substantively unreasonable. And the judge didn't address that, that maybe we'd have a plain error problem. I see this possible. I see this is exactly the same in the sense that the prosecution in this case said the guideline sentence we think is not sufficient. For many reasons, among them, that if he were prosecuted in the Fourth Circuit, you would give him career offender, the DC Circuit got it wrong, etc, etc. Right. So it's the same argument. He's saying the guidelines and it's not enough, Your Honor, and he goes on at length as to why that is. And then ultimately, the district court sentences above the guidelines. So why isn't that Judge Judge Wilkins hypothetical exactly with with respect to the failure to explain for plain error purposes? Well, I think the main difference is that that's why we aren't appellants here. We aren't here arguing that there was plain error committed, essentially not in our favor, by failing to give an even higher sentence than the one that the district court gave. I understand. I'm just trying to isolate the error was from the court's perspective, regardless of who brings the argument. The question is when the district court is presented with an argument, that's essentially the guideline sentence is saying it's insufficient, it's too much, you should give me a lower sentence and the district court doesn't explain why he refuses to do that, then we might have a plain error problem. And I'm positing if as here, the someone made an argument that the sentence is guideline sentence is not sufficient, you should give a higher sentence and the district court does do that. First of all, can't we assume that he relied on all the factors that were presented, including perhaps an inappropriate one, the Winstead, etc. But even if we can't, why isn't the district court charged with prejudicial plain error, to the extent that he doesn't explain why he was whether whether he was motivated by that argument or not? Well, right, I think it matters. First of all, that's why the prejudice component of plain error is so important. The party asserting plain error has to show how it's substantially prejudiced that party. And I don't think appellant has made anywhere close to that kind of a showing in this case. If all of the factors are pushing the sentence, but if all the factors that have been seriously identified are ones that merit that essentially say this should be a sentence above the guidelines range, and the district court was very clear in May, that the whole point was this is going to go above that, then the fact that there may have been the fact that the district court didn't go as far as perhaps the factors should have said, again, if the party that that quote unquote prejudices in that case, which it would have to be the government doesn't say this prejudices me. And so it's a plain error. So please reverse if the party isn't doing that, then this court doesn't have reason to do that. But here, of course, the claimant is appellant. So Judge Wilkins is correct that ultimately, it reduces to whether or not the sentence imposed is substantively reasonable. Because every time you answer these questions, it comes back to as long as we believe that Judge Wilkins hit a substantively reasonable number, then the party can't claim prejudice from him not explained. I think it's going to be very hard to do, particularly in the case, if I could just compare this perhaps, to the concept of when a defendant brings a claim of plain error at trial, okay, and says, Okay, I didn't object to this aspect, you know, some evidence that came in, or I didn't object to an instruction that was given at trial. But I think it was erroneous. I think it affected my try, you know, I think it's an error. It's plain and obvious here. He still is going to have to show prejudice. And if the evidence against him was overwhelming at that is one major factor that this court would take into consideration and deciding whether substantial prejudice have been shown. And I think it applies again, when the question is, ultimately, is this sentence substantively reasonable? Did the procedures somehow was there some procedural error that either affected the substantive reasonableness or made it impossible for this court to determine that. But if it is very clear on the record that the sentence was ultimately of the defense in the sense that you don't really have any complaint to say that the sentence should have been a lot lower. And we said it hasn't shown that isn't there prejudice both in the hamstringing effective appellate review, because we don't have the reasons and in undermining the appearance of fairness, when the law says you have to explain sentencing district court, and the district court doesn't do that. Isn't there some prejudicial effect on not only the defendant, but also the process? So I think, again, the prejudice, Alana was pretty clear, the third prong, the prejudice has to be against the party. It's not just prejudiced against someone somewhere. And that's why there's a difference between the third prong and the fourth prong. The fourth prong I understand, Your Honor, what one could make the argument that anytime a court sort of doesn't fully carry out statutory commands, or make some error of law, that it has some effect on the public perception of what about the defendants perception? It doesn't you so your your point is that it does not prejudice criminal defendants when they are sentenced without an explanation to them. I think, I think they have to show substantial prejudice, as Alana says, and although in the sentencing context, the showing of prejudice, you know, isn't as great as in the trial, but I still think a defendant has to really articulate and convince this court that prejudice that there was substantial prejudice against his interests. I don't think appellate has made that showing in this case. I realized that I've greatly exceeded my time. I wasn't if the court had any questions about appellate ineffectiveness claim, I would be happy to introduce one question your your entire argument with respect to that seems to hinge on whether or not the sentence was delayed, but it seemed to me that the district court was really guilty to the conduct in Superior Court that was really the linchpin. So hypothetically, if the defendants argument was there was ineffective assistance of counsel, because the counsel in Superior Court did not delay the plea, which happened after the district court case, would your argument be different? I, again, I'm not sure how different it would be. If only because it's not given that he pleaded guilty. And that, you know, again, I don't have the record of that case in front of this court here. But given that it doesn't seem that appellate really had a serious claim that he was innocent of the stabbing. Yeah, but the question is how much and he admitted to it. Right. But I look to me from the way the facts developed, that Judge Leon was aware of that case, initially, but didn't put off the sentencing. Because it was pin it was outstanding, it was pending, the defendant had not pled guilty. So he was going forward. Is that right? Wrong? No, that's not my understanding. If you look at the May hearing, I think by the by the time of May hearing, he'd already pleaded guilty. Right? That's my point. That's my point. Was it ineffective for the Superior Court counsel to allow him to plead guilty? While there was a pending case in district court, where the judge, you know, could be concerned about the guilty plea. So appellate certainly hasn't made that showing here. I mean, that that isn't, it's been very hard to understand precisely what his claim is. As far as I can tell, following his reply brief, he seems to be have pinned down the idea that he was subjected to consecutive sentences. In other words, that because the district court was allowed to sentence second, the district court ensured that the sentence in this case would be consecutive to the 90 days that he got Superior Court. I don't think that and you know, before that, to the extent it was hard for me to tell his opening brief of what he was saying is that it somehow increased his criminal history score, which didn't, because he hadn't, you know, again, it didn't get calculated as part of his criminal history score. The fact that he did commit the stabbing, you know, that was that that happened the moment that he did it. And, you know, the court was aware of that. Yes, but judges when they sentence don't do so in light of pending allegations. They do so in light of established convictions in other jurisdictions. And so my question entirely, yeah, I'm not entirely sure that that would that that's always the case. It certainly Judge Leanne would not have abused his discretion. Even if appellant hadn't formally pled guilty, let's say by time by by September. And instead, you had the allegations and the government had come in and said, he stabbed another inmate, and appellant essentially just remained silent. So like, well, that those are just allegations. But then the government came in. So look, here's the evidence, Your Honor. Here's what shows that he in fact committed the stabbing. And if Judge Leon had decided, certainly he only really has to do so by a preponderance for purposes of sentencing at most. But if he'd looked at those allegations said, Look, this looks very serious to me. You haven't really denied this. And, you know, I honestly, I think the evidence is overwhelming that you did stab another inmate. I don't think it's an abuse of discretion for him to take that into consideration. But again, appellant hasn't really identified what it was for, you know, he hasn't, he hasn't even really identified a specific attorney. That should have been, you know, that was ineffective here, whether it was district court counsel for allowing sentencing to be delayed, or whether it was Superior Court counsel for not delaying further, the plea, or the sentencing. And he's focused mostly on the sentencing. He has not really said that the plea, he hasn't he has not as far as I can tell, articulated that on appeal. Counsel, I'm sorry, I kept you over quite a bit. I just have one final, Judge Wilkins, one final question, which is, there was something in the defendant's brief about knowing involuntary and the extent to which the plea itself in this case was problematic. And in looking at the record, it's, it's pretty clear that not all of the rule 11 requirements in terms of the district court quality was followed. And I know in previous cases, the DC Circuit has admonished the US Attorney's Office to make sure that they have practices and policies in place to assist the district court. And I'm just wondering about the status of that. Is there training on this new attorney's office? What is going on with that? We have endeavored to do so. It is sometimes a little difficult here. The Judge Leon did address the appeal waiver that which is the only, the only thing at issue in the real in the rule 11 colloquy. And again, that's just ancillary as to whether he can even get this court to review that particular claim. And obviously, for the reasons we cite in the brief, we don't think it has substantive merit, even if this court were to reach an unplanned error review. But after the appeal waiver itself, that appeal as to sentence, not appeal as to conviction, right? I mean, he did the appeal waiver. Well, no, no, no, it's both. It said the appeal waiver as written, if you look at the written, he it says, he's up, he is giving up his right to appeal his conviction or his sentence, or to challenge in the collateral attack except for ineffectiveness ground as written. But the problem is that the judge did not the judge did not break that out. Correct. And so, well, no, no. So the judge says, what the judge specifically addresses and says, Look, the only thing you're going to get to appeal is if the sentence here goes above the maximum bylaw. You are correct, Your Honor, that the judge doesn't address one specific clause of the written plea way of the appeal waiver, which says, you cannot challenge, you cannot raise a claim that your conduct does not fit within the scope of the statute. Okay. It would have certainly have been preferable under this court's case law for the judge to have expressly mentioned that. As for the training, I can say that for prosecutors, you know, there, I, we have certainly tried to ask them to make sure that all aspects of an appeal waiver are mentioned orally at the rule 11 colloquy. I think that training is ongoing. That's my understanding. And so, you know, but there are going to be cases, unfortunately, where sometimes, perhaps the prosecutor doesn't realize that the judge hasn't mentioned all aspects. And I think it is difficult for district judges, as other judges at this court have noted, to try to walk the fine line between summarizing a an appeal waiver provision in a way that the lay person can understand, or just reading it verbatim, which may not be very helpful anyway. And so I think, you know, that that's still an ongoing process as to figure out sort of how to walk that line. This court, I think, ultimately, even if this court decides that, you know, perhaps it doesn't want to enforce the appeal waiver on that point, for the reasons we described in our brief, there just isn't any substantive merit to to appellant's claim that he didn't commit a 924 C offense, because a felony under punishable under the Controlled Substances Act includes carrying a weapon in connection with a narcotics conspiracy. If there are no further questions, we would respectfully submit that the judgment of the district court should be affirmed. Thank you. All right. Thank you, Mr. Coleman. Mr. Orenberg, we'll give you two minutes for questions. Thank you, Judge Wilkins. I think Judge Jackson hit the nail on the head when she said on in a couple of different ways that Judge Leon did not tell us what he relied upon when sentencing Mr. Harrison in this case. You know, traditionally, in a sentencing in this district, and in the District of Maryland, where I practice, a district court judge will go through the 18 U.S. Code 3553 factors, each of the seven factors, and explain or describe under each of those seven factors why he's going to impose the sentence that he or she eventually imposes. That did not happen in this case, and that has left us in a very uncomfortable posture. I think this court, at least Judge Jackson, has some concerns about the way that the district court conducted itself with respect to sentencing procedures. We don't know how he arrived at the 110-month final decision as to a sentence for Mr. Harrison. There's just speculation that it was halfway between this point and that point. That's all we have is speculation. We do not have an enumeration of the factors under 3553A or the specificity as required by 3553C2. Unless the court has any other questions, I will submit on the briefs. All right. Thank you, counsel. We will take the matter under advisement.
judges: Wilkins, Katsas, Jackson